IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⟶ D.C.

05 JUL 12 PH 5:45

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| G. UMBERTO MEDURI, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-2415 Ma/P |
| | ) | |
| THE UNIVERSITY OF TENNESSEE | ) | |
| HEALTH SCIENCE CENTER; HENRY | ) | |
| G. HERROD, M.D., Individually | ) | |
| and in his official capacity; | ) | |
| MICHAEL E. DOCKTER, M.D., | ) | |
| Individually; and DIANA JOHNSON, | ) | |
| Ph.D., Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PENDING MOTIONS

This case arises from various employment actions taken against Plaintiff.  Plaintiff brings claims for constitutional Due Process and Equal Protection violations under 42 U.S.C. § 1983, employment discrimination under 42 U.S.C. § 1981, and violation of the Tennessee Human Rights Act.

Before the court are the Defendants' motion to dismiss, filed November 19, 2004, Plaintiff's motion to certify a question of state law, filed January 12, 2005, and Defendants' motion to dismiss the first amended complaint, filed February 17, 2005. Plaintiff responded to Defendants' motion to dismiss on January 7, 2005 and to Defendants' motion to dismiss the first amended complaint on April 20, 2005.  Defendants responded to Plaintiff's

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ____7-14-05

49

motion to certify a question of state law on February 17, 2005. For the following reasons, the November 19 motion to dismiss is DENIED, the February 17 motion to dismiss is GRANTED in part and DENIED in part, and the motion to certify a question of state law is DENIED.

## I. Background

Plaintiff alleges the following facts. Dr. Umberto Meduri has been employed with the University of Tennessee Health Science Center ("UTHSC") since August, 1988. He is currently a tenured professor in the Division of Pulmonary and Critical Care Medicine at the University of Tennessee's College of Medicine. (1st Am. Compl. ¶ 7.) Dr. Meduri was an Italian citizen until May 2, 2002, when he became a citizen of the United States.

In 2002, Dr. Meduri was a clinical investigator serving as the Director of the Memphis Lung Research Program, which he founded in 1996 to treat and conduct clinical investigations of patients with Acute Respiratory Distress Syndrome ("ARDS") and sepsis. During 2002, Dr. Meduri and the Memphis Lung Research Program had contractual research funding from the Assisi Foundation of Memphis and the Baptist Health Care Foundation, as well as an application for funding with the University of Michigan for conducting clinical trials. (Id.)

On or before January 22, 2002, Dr. Meduri decided to replace Dr. Elizabeth Tolley as the statistician employed in support of his

2

ongoing research projects in ARDS and sepsis. Dr. Meduri's decision was made with the knowledge and approval of his superiors, including Defendant Dr. Henry G. Herrod, Dean of the College of Medicine. Before removing Dr. Tolley, Dr. Meduri attempted to correct her performance through the UTHSC administrative process. (Id. ¶ 10.) In February, 2002, Dr. Tolley met with Defendants Dr. Diana Johnson, Assistant Dean for Faculty Affairs of the College of Medicine at UTHSC, and Dr. Michael E. Dockter, Vice Chancellor of Research at UTHSC and Associate Dean of the College of Medicine, to file a grievance about her removal from Dr. Meduri's research projects. (Id. ¶ 12.) Dr. Dockter encouraged Dr. Tolley not to file a grievance, but to file charges of scientific misconduct against Dr. Meduri. Dr. Tolley was reluctant to file such charges, but Dr. Dockter told her that he was UTHSC's "Research Integrity Officer" ("RIO") and that he would control any investigation of alleged scientific misconduct. (Id.)

Before the filing of official charges, Dr. Johnson, with permission from Dr. Dockter, asked Dr. Barbara Hawkins of Johns Hopkins University to provide an independent review of the merits of Dr. Tolley's allegations. The Defendants, however, failed to provide accurate and complete data to Dr. Hawkins, including any protocols for the ARDS study. (Id. ¶ 13.) On May 8, 2002, Dr. Dockter told Dr. Tolley that Dr. Hawkins had recommended that an investigation be done and that Dr. Tolley must immediately file

3

charges of scientific misconduct because Chancellor William Rice had "jumped the gun" by reporting to Baptist Memorial Healthcare Foundation, a funding source for Dr. Meduri's research, that UT was investigating Dr. Meduri for scientific misconduct. (Id. ¶ 14.) On or before May 6, 2002, Dr. Dockter had mistakenly informed Chancellor Rice that there had been a finding of scientific misconduct against Dr. Meduri. Based upon that mistake, Chancellor Rice had notified the Baptist Hospital Memorial Foundation that Dr. Meduri was the subject of scientific misconduct charges and requested that the Foundation stop supporting Dr. Meduri's research. (Id.)

At the insistence of Dr. Dockter and Dr. Johnson, Dr. Tolley notified the University of her intent to file scientific misconduct charges against Dr. Meduri. On May 15, 2002, Dr. Tolley filed a charge of scientific misconduct with Dr. Dockter that contained the following false statements: that Dr. Meduri had falsified data on a clinical trial that formed the basis of an academic paper, that Dr. Meduri had fabricated results of the microbiological experiments in duplicate publications, and that Dr. Meduri had engaged in serious ethical deviations from accepted practice in conducting and reporting the results of two ongoing clinical trials. (Id. ¶¶ 15-16.) The Defendants failed to give Dr. Meduri timely notice, as required by the UTHSC Faculty Handbook's "Statement of Policy on Misconduct in Research and Service." (Id.

4

¶ 17.)

After the charge of misconduct was made by Dr. Tolley, Dr. Dockter appointed Dr. Johnson to serve as the chair of an Inquiry Committee.  Under Section 1 of the Misconduct Policy, the purpose of the inquiry is to gather information to determine whether an allegation of misconduct warrants an investigation. (Id. ¶ 18.) Before the charge was filed, Dr. Johnson had worked closely with Dr. Tolley for at least four months, assisting Dr. Tolley in the development and preparation of her charge against Dr. Meduri.  Dr. Johnson had insisted that charges of scientific misconduct be filed, that filing charges would address Dr. Tolley's concerns about Dr. Meduri, and that a grievance about Dr. Tolley's removal as statistician would not be necessary. (Id. 19.)  Under the provisions of the Faculty Handbook, as well as the Model Procedures of the U.S. Office of Research Integrity, ("ORI"), no member of an inquiry committee should have a real or apparent conflict of interest. (Id. ¶ 20.)

From May 28, 2002 through January 10, 2003, Dr. Meduri requested on multiple occasions a copy of the charge and supporting documentation submitted by Dr. Tolley in order to present his own evidence to refute the charge.  Section 1 of the Misconduct Policy provides for the accused to have an opportunity to "present evidence orally or in writing as appropriate."  Dr. Dockter and other officials at the University of Tennessee refused to provide

5

Dr. Meduri with the information he requested. (Id. ¶ 21.)

The Inquiry Board exceeded its authority by making an adjudication of misconduct and further recommending that an academic paper written by Dr. Meduri be retracted and that Dr. Meduri be banned from conducting clinical research. Under ORI Model Procedures and the UT Misconduct Policy, the Inquiry Committee is empowered only to determine whether sufficient grounds exist for conducting an investigation. (Id. ¶ 22.) On September 5, 2002, Dr. Meduri wrote a letter to Chancellor Rice outlining various objections to the procedures followed by the Inquiry Committee. (Id. ¶ 23.) On September 12, 2002, Chancellor Rice agreed that the Inquiry Committee had not followed the appropriate procedures and that a new inquiry would begin and be concluded by November 1, 2002. (Id. ¶ 24.) On October 14, 2002, Chancellor Rice required that the withdrawn inquiry report be sequestered and maintained exclusively with the University of Tennessee ("UT") Office of General Counsel. (Id. ¶ 25.) Against the wishes of Chancellor Rice, Dr. Dockter asked Dr. Johnson to release, as soon as possible, the results of the Inquiry Committee's conclusions to Dr. Tolley. (Id. ¶ 26.) After October 14, 2002, the first inquiry report was circulated to prominent faculty members at the University of Tennessee, Memphis. (Id. ¶ 27.)

In late October, 2002, after having been removed from the inquiry process, Dr. Johnson organized a meeting with Doctors

Herrod and Dockter and Dr. Clair Cox, Chairman of the Institutional Review Board of the University of Tennessee, at which Dr. Johnson requested that disciplinary action be taken against Dr. Meduri. (Id. ¶ 28.)  Dr. Johnson gave Dr. Cox a portion of Dr. Tolley's charge of scientific misconduct, as well as the sequestered report of the Inquiry Committee.  Dr. Johnson also requested that Dr. Cox discuss this information at a meeting of the Institutional Review Board in order to remove Dr. Meduri as principal investigator in several research projects. (Id. ¶ 29.)  Dr. Johnson also suggested that a portion of Dr. Tolley's charge of scientific misconduct and the report be sent to the Institutional Review Board for immediate review and recommendations.  Doctors Herrod and Dockter agreed to this plan, and the materials were submitted to the entire Institutional Review Board. (Id. ¶ 30.)  Doctors Johnson and Dockter asked the Institutional Review Board to take disciplinary action against Dr. Meduri.  Under the UT Misconduct Policy and ORI Model Procedures, information surrounding an allegation of scientific misconduct is considered confidential and disclosure to individuals inside or outside the University of Tennessee is prohibited except on a "need to know" basis. (Id. ¶¶ 31-32.)

On November 1, 2002, Dr. Dockter appointed a second inquiry board.  One of the three board members was Dr. Timothy Fabian, who had a long professional relationship with Dr. Tolley.  ORI Model Procedures provide that Dr. Dockter, as RIO, must consider, in

7

ensuring impartiality, whether a board member had been a co-author, collaborator, or co-investigator with the accused or accuser. Dr. Meduri alleges that Dr. Dockter knew or should have known of Dr. Fabian's past collaboration and co-authorship with Dr. Tolley. (Id. ¶ 35.) On December 16, 2002, Dr. Meduri was questioned by the second Inquiry Committee without having been informed of the evidence or charges against him. The committee did not recall Dr. Meduri for questioning. On December 30, 2002, Acting Chancellor Jim Gibb Johnson informed Dr. Meduri that the Inquiry Committee had recommended an investigation of some of the charges filed by Dr. Tolley. (Id. ¶¶ 36-37.)

On January 13, 2003, Dr. Meduri was allowed to see some of the charges filed by Dr. Tolley. On January 24, Dr. Meduri requested unsuccessfully that Dr. Dockter be removed as the RIO. On January 28, Dr. Meduri was notified that a full committee investigation of the charges would be commenced. (Id. ¶¶ 39-41.) Dr. Dockter appointed five members to the Investigation Committee. The only member of the Investigation Committee with expertise in ARDS or critical care was Dr. Martin Croce, who was actively collaborating with Dr. Tolley and eventually published a journal article with her. (Id. ¶ 42.) ORI Model Procedures require that Dr. Dockter, as the RIO, must consider whether a member of the investigation committee has been a collaborator or co-author with the accused or accuser. (Id.) The UT Misconduct Policy requires further that the

8

Committee "will include a minimum of three University of Tennessee faculty members having expertise in the area of research or service under investigation and who do not hold administrative appointment." (Id. ¶ 43.)

The Chair of the Investigation Committee was Dr. Terrance Ackerman, who had participated in an earlier meeting of the Data and Safety Committee on December 12, 2001, at which Dr. Tolley's allegations against Dr. Meduri were discussed. (Id. ¶ 44.)   Dr. Dockter and Dr. Tolley had also discussed with Dr. Ackerman on other occasions the sequestered report and the conduct of the first Inquiry Committee.   Dr. Meduri requested that Dr. Ackerman be removed as Chair of the Committee, but this request was denied. (Id. ¶ 45.)

On May 5, 2003, Dr. Meduri received a draft of the Report of the Investigation Committee, which found no scientific misconduct. In May, 2003, Dr. Meduri discussed resolving the charges with Dr. Ackerman and UT Assistant General Counsel, neither of whom mentioned the existence of an alternative draft.   On May 14, 2003, Dr. Meduri decided not to sign an agreement resolving the charges of scientific misconduct and waiving all claims that he might have against the University and its employees.   Shortly thereafter, Dr. Meduri received, without notice, an alternative draft report finding him guilty of scientific misconduct. (Id. ¶ 46.)

On May 16, 2003, the Committee held its final meeting without

giving Dr. Meduri time to prepare a response to the new draft committee report. At the time of the oral presentation, Dr. Meduri realized that some of the materials he had submitted on May 9, as well as the letter of support from the members of his division, had not been given to the members of the Committee. Those materials were not mentioned in the Investigation Committee's final report. (Id. ¶ 47.) Despite several factual errors, the Acting Chancellor accepted the report of the Investigation Committee and notified Dr. Meduri on June 13, 2003, that he upheld the Committee's finding of scientific misconduct and recommended sanctions against Dr. Meduri. (Id. ¶¶ 48-50.)

On July 24, 2003, Dr. Herrod imposed the following sanctions against Dr. Meduri: 1) removing him as principal investigator on any research project for a period of twenty-four (24) months, retroactive to July 1, 2003, 2) prohibiting him from applying for any research project while on the faculty of UTHSC for twenty-four (24) months, retroactive to July 1, 2003, 3) removing all laboratory space assigned to him and prohibiting him from conducting research while a faculty member at UTHSC unless supervised by Dr. Herrod, 4) requiring him to retract an article published in the Journal of the American Medical Association on July 8, 1998, as well as any related articles, 5) ordering him to cease and desist from all conversations with other faculty members, fellows, residents, or anyone else on University property about the

Committee's investigation or report.  As a result of these sanctions, Dr. Meduri and the Memphis Lung Research Program lost more than $2.5 million in funding. (Id. ¶¶ 54-55.)

On July 28, 2003, Dr. Meduri appealed the decision to the President of the University of Tennessee. (Id. ¶ 57.)  The ORI also reviewed the final investigative report and supporting materials. The ORI refused to pursue the scientific misconduct finding against Dr. Meduri made by UTHSC and, on December 12, 2003, notified Dr. Meduri that he is eligible to apply for and receive federal research funding without restrictions. (Id. ¶ 58.)  On October 12, 2004, Interim Chancellor Rice reversed the previous decision finding scientific misconduct and rescinded the sanctions against Dr. Meduri.  Dr. Meduri's research programs, however, have not been restored, various specimens have not been returned to Dr. Meduri, research monies have not been reinstated, and Dr. Meduri's full salary has not been restored.  Further, Dr. Meduri has requested a name-clearing hearing before the Faculty and Fellows of the Department of Medicine, and none has been held. (Id. ¶ 60.)

The Defendants have received allegations of scientific misconduct against other professors who were not foreign-born or Italian.  On those other occasions, the Defendants did not encourage the filing of charges and did not violate the provisions of the UT Misconduct Policy and/or ORI Model Procedure. Dr. Meduri alleges that the actions against him were taken because of his race

and/or national origin. (Id. ¶ 61.)

## II. Jurisdiction

Plaintiff brings claims for constitutional Due Process and Equal Protection violations under 42 U.S.C. § 1983, employment discrimination under 42 U.S.C. § 1981, and violation of the Tennessee Human Rights Act. Thus, the court has federal-question jurisdiction under 28 U.S.C. § 1331. The court has jurisdiction over pendant state claims under 28 U.S.C. § 1367(a).

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's complaint "for failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992), and must construe all of the allegations in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (abrogated on other grounds). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## IV. Analysis

### A. Motion to Dismiss Filed November 19, 2004

Since the Defendants filed their original motion to dismiss,

12

Dr. Meduri has filed an amended complaint, and the Defendants have filed another motion to dismiss that complaint on substantially identical grounds.   Thus, the November 19 motion to dismiss is DENIED as moot.

## B. Motion to Certify Question of State Law

Tennessee law allows individuals to bring monetary claims before the Tennessee Claims Commission ("TCC") based on acts or omissions of state employees. See Tenn. Code Ann. § 9-8-307(a). Dr. Meduri filed complaints with the Tennessee Claims Commission, on May 14, 2003, and January 12, 2004.   Both complaints allege defamation and invasion of privacy, and the second complaint also alleges breach of contract.   The Defendants move for dismissal based on Tenn. Code Ann. § 9-8-307(b), which states:

> Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee.   The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.

The Defendants argue that Dr. Meduri has waived his federal claims by filing a complaint before the TCC.

Dr. Meduri requests that the following question be certified under Tennessee Supreme Court Rule 23:

> Whether the waiver provision of the Tennessee Claims Commission Act, i.e., Tenn. Code Ann. § 9-8-307(b), applies to 42 U.S.C. § 1983 claims brought in federal court against state employees in their individual capacities.

13

The two prior TCC complaints and the instant suit appear to be based on the same events, i.e., the actions surrounding UTHSC's investigation of Dr. Meduri and the subsequent sanctions for scientific misconduct. Indeed, Dr. Meduri states that "the above question of state law will be determinative of the outcome of this case...." (Pl. Mot. to Certify at 1.)

United States courts in the Sixth Circuit, interpreting Tennessee law, have consistently held that the waiver provision in Tenn. Code Ann. § 9-8-307 applies to claims under federal law. See, e.g., White v. Gerbetz, 860 F.2d 661 (6th Cir. 1988); Bryant-Bruce v. Vanderbilt Univ., Inc., 974 F. Supp. 1127, 1135-36 (M.D. Tenn. 1997); Mirabella v. University of Tennessee, 915 F. Supp. 925, 926 (E.D Tenn. 1994). The Eastern Section of the Tennessee Court of Appeals found the Sixth Circuit authority persuasive and held that the plaintiff's state law claims would be waived unless the Claims Commission determined that the actions by the defendants were outside the scope of their employment. Ferguson v. Hope, 1999 WL 552877 (Tenn. Ct. App. 1999). The Middle Section of the Tennessee Court of Appeals, however, determined that filing a claim before the Claims Commission did not require dismissal of the plaintiff's constitutional claims in state court. Wellington v. Ledford, 1999 WL 499776, at *6-7 (Tenn. Ct. App. 1999); see also Lattimer v. Tennessee Department of Corrections, 2002 WL 598558, at *4-5 (Tenn. Ct. App. 2002).

14

This court has previously addressed the existing authority on the present question and concluded that the Tennessee Supreme Court would adopt the interpretation of the Sixth Circuit and the Eastern Section of the Tennessee Court of Appeals. See Pierce v. University of Tennessee, Order Granting Motions to Dismiss, No. 01-2940 (W.D. Tenn., May 15, 2003). Dr. Meduri has not offered any other authority or argument that would suggest a different conclusion in this case. The waiver provision states that the filing of a claim with the Commission "shall operate as a waiver of any cause of action, based on the same act or omission." Tenn. Code Ann. § 9-8-307(b). Although the waiver is "void" if the Commission determines that the employee was not acting within the scope of the employee's office or employment, there is no condition qualifying the waiver until the Commission makes that determination. See id. Thus, if a Plaintiff files a claim with the Commission, that Plaintiff is precluded from maintaining a federal or state claim in federal or state court until the waiver is voided, and the federal or state lawsuit must be dismissed.

Dr. Meduri has brought to the court's attention a recent order from the United States District Court for the Eastern District of Tennessee certifying the following question of state law to the Tennessee Supreme Court:

> Does the withdrawal or voluntary non-suit of a claim filed with the Tennessee Claims Commission, done prior to any action being taken by the Claims Commission, still activate the waiver provision of Tennessee Code Annotated

§ 9-8-307(b) to require dismissal of a plaintiff's federal and/or state cause of action arising from the same act or omission as the claim before the Claims Commission?

Haley v. University of Tennessee, Knoxville, Order of Certification, No. 3:03-CV-292 (E.D. Tenn.)[1]    Although the certified question is related to the broader question of waiver, it does not require the Tennessee Supreme Court to address the issue raised by Dr. Meduri.[2]  In fact, the certified question appears to assume that a claim brought before the TCC generally operates to waive a federal cause of action arising from the same conduct. Thus, the fact that a related question is pending before the Tennessee Supreme Court does not support certification of the question presented by Dr. Meduri.  Given the precedent from the Sixth Circuit and the Eastern Section of the Tennessee Court of Appeals, the court declines to certify the proposed question.

### C. Motion to Dismiss Filed February 17, 2005

### 1. Waiver

The Defendants' motion to dismiss rests, in part, on the argument that Dr. Meduri has waived his right of action by filing claims before the TCC.  Dr. Meduri argues, however, that certain of his claims do not arise from the same "act or omission" as his TCC

---

[1] The exact date of the Eastern District's order is unclear.  From the record, the court assumes that it is recent.

[2] The Tennessee Supreme Court could hold that, whether or not § 9-8-307(b) applies generally, a plaintiff's voluntary withdrawal or non-suit of a claim before the Claims Commissions means that § 9-8-307(b) no longer requires dismissal.

claims and are not, therefore, barred by Tenn. Code Ann. § 9-8-307(b). Dr. Meduri's two TCC complaints contain statements of fact substantially similar to the statement in the first amended complaint and allege causes of action for defamation, invasion of privacy, and breach of contract. Dr. Meduri argues that his TCC claims are based only on the Defendants' conduct in publishing false statements arising from the misconduct investigation and that his procedural allegations, specifically the failure to disclose charges and evidence against him and the alleged conflicts of interest of various board members, are not the basis of his TCC claims.

Dr. Meduri's second TCC complaint alleges that

Dr. Michael Dockter selected Dr. Dianna[3] [sic] Johnson to serve as Chairman of the Inquiry Board even though he knew that Dr. Johnson helped Dr. Tolley develop allegations against Dr. Meduri and that she had already concluded that Dr. Meduri had engaged in scientific misconduct. Under the provisions of the Faculty Handbook, as well as the Model Procedures of the ORI, no member of an inquiry committee should have a real or apparent conflict of interest. Due to Dr. Johnson's active assistance of Dr. Tolley in developing the charges and actual bias against Dr. Meduri, Dr. Johnson should not have served on the inquiry committee because of a real and/or apparent conflict of interest.

(2d. TCC Compl. ¶ 12; see also Am. Compl. ¶¶ 18-19.)[4]  He further

_____

[3] In the style of this case, Dr. Johnson is referred to as "Diana." In the prior TCC complaints, her first name is spelled "Dianna."

[4] Although the texts of Plaintiff's TCC complaints are outside the pleadings, the court may take judicial notice of them as a matter of public record in deciding a motion to dismiss under Fed. R. Civ. P. 12(b). See Mirabella v. University of Tennessee, 915 F. Supp. 925, 926 (E.D. Tenn. 1994)(citing U.S. v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991)).

alleges that Doctors Dockter and Johnson "refused to provide Dr. Meduri with a copy of the charges and supporting documentation submitted by Dr. Tolley despite provisions of the Faculty Handbook and Model Procedures of the ORI that require the disclosure to a party accused of scientific misconduct of the charges and supporting documentation." (Id. ¶ 14.) Dr. Meduri argues that these allegations are "necessary to explain the publication of the sequestered report," but that they do not allege conduct from which his TCC claims arise.

Dr. Meduri's second TCC complaint states, categorically, that "[t]he actions of Dr. Michael Dockter, Dr. Dianna Johnson and Dean Herrod constitute" defamation, invasion of privacy, and breach of contract. (Id. ¶¶ 32-34.) In particular, Dr. Meduri cites the UT Faculty Handbook as setting forth binding contractual provisions that the Defendants violated. (Id. ¶ 34.) These factual allegations, which specifically invoke the Defendants' violations of procedure contained in the UT Faculty Handbook, are not mere background explanation, but constitute elements of Meduri's TCC claim for breach of contract. Because Dr. Meduri's TCC claims were based on the above alleged conduct, claims before the court that are based on the same conduct must be dismissed.

Dr. Meduri's amended complaint also contains allegations that are not in either of his TCC complaints. In particular, he alleges that the final decision finding him guilty of scientific misconduct

18

and imposing sanctions was based on his race and/or ethnicity. Because these decisions are not mentioned in either of his TCC complaints, Dr. Meduri has not waived the cause of action based on that conduct. In addition, Dr. Meduri contends that the following wrongful acts alleged in the amended complaint are not contained in the TCC complaints: 1) that Dr. Dockter appointed a biased member to the second Inquiry Board and that this Board did not give Dr. Meduri an opportunity to respond to adverse evidence, 2) that Dr. Johnson denied his request to remove Dr. Dockter from the position of RIO, 3) that the Investigation Committee contained members who had conflicts of interest, 4) that the Investigation Committee first drafted a report finding no scientific misconduct and only issued its eventual report after Dr. Meduri refused to waive all legal claims against UTHSC and its employees, and 5) that the Investigation Committee ignored evidence and reached an erroneous final report finding scientific misconduct.

The court agrees that these allegations are contained only in the first amended complaint and not in either of the TCC claims. Defendants argue, without citing any authority, that these acts are "part and parcel" of Dr. Meduri's TCC claims. Although the acts alleged in the amended complaint and the TCC complaints appear to constitute a general course of conduct, the court will not construe Tenn. Code Ann. § 9-8-307(b) to bar claims based on acts that are not alleged in a TCC complaint. Thus, Dr. Meduri has not waived

19

his claims arising from the acts first alleged in the amended complaint; these include his discrimination claim and the due process and equal protection claims arising from the five factual allegations listed above. Any other claims arising from acts alleged in either of the TCC complaints have been waived and must be dismissed.

### 2. Statute of Limitations

The parties agree that a one-year statute of limitations applies to claims brought under 42 U.S.C. § 1983.[5] See Tenn. Code Ann. § 28-3-104. On June 3, 2003, the Investigative Committee found Dr. Meduri guilty of scientific misconduct and issued its recommendation of sanctions. Dr. Meduri filed this lawsuit on June 2, 2004. The Defendants argue that Dr. Meduri's claims arising from various procedural deprivations are time barred because the alleged deprivations occurred before June 2, 2003. Dr. Meduri contends that claims arising from those acts are preserved under the "continuing violation theory."

Many of the procedural violations are alleged to have occurred more than one year before Dr. Meduri filed suit. Those violations, however, were part of an ongoing investigation that was not concluded until June 2, 2003. A due process violation occurs when a plaintiff is actually deprived of "life, liberty, or property,"

---

[5] Because the statute of limitations for claims under 42 U.S.C. § 1981 is four years, the parties do not dispute that those claims were timely filed.

not when he is denied pre-deprivation process. See Lawshe v. Simpson, 16 F.3d 1475, 1479 (7th Cir. 1994). Thus, a procedural due process claim generally accrues when the plaintiff is notified that he will receive no further process, or when the he is actually deprived of the protected property interest. See Knox v. Davis, 260 F.3d 1009, 1015 (9th Cir. 2001); Lawshe, 16 F.3d at 1480. To hold otherwise would encourage public employees to interrupt ongoing hearings and/or investigations by filing suit; public employers would be encouraged to delay issuing final decisions on such hearings until after the limitations period had passed on procedural violations.

The Investigative Committee did not reach its decision until June 3, 2003, and sanctions were not imposed on Dr. Meduri until July 24, 2003. Because Dr. Meduri filed suit within one year of both of those actions, his remaining claims under § 1983 are timely filed.

### 3. Due Process Claims

Dr. Meduri was not discharged from his position as a tenured professor. Rather, he was subjected to the following sanctions: 1) removal as principal investigator on any research project for a period of twenty-four (24) months, retroactive to July 1, 2003, 2) prohibition from applying for any research project while on the faculty of UTHSC for twenty-four (24) months, retroactive to July 1, 2003, 3) removal of all laboratory space assigned to him and

21

prohibition from conducting research while a faculty member at UTHSC unless supervised by Dr. Herrod, 4) retraction of an article published in the Journal of the American Medical Association on July 8, 1998, as well as any related articles, 5) prohibition from conversing with other faculty members, fellows, residents, or anyone else on University property about the Committee's investigation or report.[6]

The Defendants contend that Dr. Meduri has not been deprived of property interests sufficient to trigger the protections of the Due Process Clause of the United States Constitution.   Property interests are not created by the Constitution, but are instead defined "by existing understandings, such as contracts, that stem from an independent source such as state law." Pinelo v. Northern Kentucky University, 142 F.3d 435, at *3 (6th Cir. 1998)(table)(citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  Dr. Meduri has suffered a deprivation of property if the Defendants have "significantly and materially impaired [his] agreed employment status." Samad v. Jenkins, 845 F.3d 660, 662-63 (6th Cir. 1988).

Construing the allegations in the light most favorable to Dr. Meduri, the court cannot conclude that Dr. Meduri can prove no set of facts showing that his employment status was "significantly and materially impaired," thus causing him "substantial tangible harm."

---

[6] The sanctions have since been reduced or rescinded.

22

Id. at 662.   Because Dr. Meduri has alleged that his ability to perform research has been drastically reduced, he has stated a claim for deprivation of a property interest in his professorship. See, e.g., Gies v. Flack, 1996 WL 1671234, at *4 (S.D. Ohio 1996)(finding that tenured professor stated a claim for property deprivation where he was denied teaching assignments and contact with students).

The Defendants further contend that Dr. Meduri has failed to state a claim for deprivation of a liberty interest.   "[W]hen a plaintiff alleges the loss, infringement or denial of a governmental right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect, a claim for deprivation of liberty without due process will lie." Mertik v. Blalock, 983 F.2d 1353, 1362 (6th Cir. 1993). Reading the allegations in the light most favorable to Dr. Meduri, the public disclosures surrounding the misconduct investigation carry a stigmatizing effect.   Because the stigmatizing publication occurred as an incident to the alleged property deprivation, Dr. Meduri also states a claim for deprivation of a liberty interest. See id. at 1363.

### 4. Sovereign Immunity

The Defendants argue that the doctrine of sovereign immunity bars claims against UTHSC, Dr. Herrod in his official capacity, Dr. Dockter in his official capacity, and Dr. Johnson in her official

capacity.  As a preliminary matter, the first amended complaint names only Defendant Herrod in his official capacity. Consequently, the court dismisses any official-capacity claims against Doctors Dockter and Johnson.  Because Dr. Meduri agrees that all federal claims against UTHSC are barred, the court dismisses those claims, as well.  Dr. Meduri further concedes that any claims for damages against the individual defendants in their official capacities under § 1983 or § 1981 are barred.

Dr. Meduri contends, however, that he seeks prospective injunctive relief available under Ex Parte Young, 209 U.S. 123 (1908).  Specifically, Dr. Meduri seeks the restoration of "position and benefits enjoyed ... prior to Defendants' violations...."  The Defendants argue that Dr. Meduri has no claim for injunctive relief because the sanctions against him have been rescinded.  Dr. Meduri claims that, despite the rescission of the sanctions, certain research programs, monies, and specimens have yet to be restored to him.  To the extent that the restoration of these benefits rests on the decisions or actions of private entities that are not parties to this litigation, the court is without authority to issue injunctive relief.

Dr. Meduri further requests a name-clearing hearing before the Faculty and Fellows of the Department of Medicine.  This request for prospective injunctive relief is not barred by the Eleventh Amendment.  See Thorn v. State, Department of Taxation, 173 F.3d 862

24

(Table)(9th Cir. 1999)(citing <u>Quern v. Jordan</u>, 440 U.S. 332, 336-37 (1979)). Because Dr. Meduri has stated a claim against him for prospective injunctive relief, the court will not dismiss the claim against Dr. Herrod in his official capacity.

### 5. THRA Claims

Dr. Meduri agrees that the individual defendants are not "employers" within the meaning of the Tennessee Human Rights Act ("THRA") and that courts of the state of Tennessee have exclusive jurisdiction over his THRA claims against UTHSC.[7] Thus, the court dismisses Dr. Meduri's THRA claims, without prejudice to Dr. Meduri's right to file his claim against UTHSC in state court.

---

[7] Dr. Meduri actually concedes only that his THRA claims against the individual Defendants "in their individual capacity" should be dismissed. Because the THRA claims against state employees in their official capacities are functionally equivalent to claims against the state, the official-capacity claims are redundant, and the jurisdictional limitation applies to them, as well. <u>See</u> <u>Stefanovic v. University of Tennessee</u>, 935 F. Supp. 944, 946-47 (E.D. Tenn. 1996)(citing <u>Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Association</u>, 450 U.S. 147 (1981));<u>see also</u> <u>Boyd v. Tennessee State University</u>, 848 F. Supp. 111, 114 (M.D. Tenn. 1994).

## V. Conclusion

For the foregoing reasons, the November 19, 2004 motion to dismiss is DENIED as moot, the February 17, 2005 motion to dismiss is GRANTED on the claims arising from Plaintiff's TCC complaints, on official-capacity claims against Doctors Dockter and Johnson, on all federal claims against UTHSC, and, without prejudice, on all claims under the THRA. The motion to dismiss is DENIED on all other claims. Plaintiff's motion to certify a question of state law is DENIED.

So ORDERED this 12th day of July 2005.

SAMUEL H. MAYS, JR
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 49 in case 2:04-CV-02415 was distributed by fax, mail, or direct printing on July 14, 2005 to the parties listed.

---

Rebecca P. Tuttle
UNIVERSITY OF TENNESSEE, MEMPHIS
66 N. Pauline
Ste. 428
Memphis, TN 38105

William B. Ryan
DONATI LAW FIRM, LLP
1545 Union Ave.
Memphis, TN 38104

Devon L. Gosnell
UNIVERSITY OF TENNESSEE
719 Andy Holt Tower
Knoxville, TN 37996--017

Donald A. Donati
DONATI LAW FIRM, LLP
1545 Union Ave.
Memphis, TN 38104

Honorable Samuel Mays
US DISTRICT COURT